# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JAMAL SMITH | CIVIL ACTION |
|---|---|
| v. | NO. 18-5299 |
| COMMUNITY EDUCATION CENTERS, INC., *et al.* | |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                                                                                       May 10, 2019

Plaintiff Jamal Smith alleges that Defendants Community Education Centers, Inc. ("CEC"), the GEO Group, Inc., and Correctional Officers John Does 1 through 4 violated his civil rights while he was a detainee at a Delaware County correctional facility. (Compl., ECF 1 at ¶¶ 18-24.) Plaintiff's Complaint sets out four claims for relief:

- Count 1: Fourth Amendment – Excessive Force, against Correctional Officers John Does 1 through 4;

- Count II: 42 U.S.C. § 1983 <u>Monell</u> claim against CEC and the GEO Group, Inc.

- Count III: Assault and battery claims against Correctional Officers John Does 1 through 4; and

- Count IV: Negligence claims against CEC and the GEO Group, Inc.

CEC and the GEO Group, Inc. now move to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6). (Mot., ECF 3.) Plaintiff responds in opposition to CEC, but proposes a stipulation to dismiss without prejudice the claims against the GEO Group, Inc. (Resp. Memo., ECF 7 at 3; Resp. Memo. Ex. B.) Accordingly, the Court will only address the motion as it relates to claims against CEC. For the reasons stated below, CEC's Motion to Dismiss is granted and Plaintiff's claims against CEC are dismissed without prejudice, with leave to amend.

**I.     Background**

For the purposes of this motion, the following facts are taken as true from Plaintiff's Complaint.  At the time of the incident that sparked this action, Plaintiff was an arrestee and detainee at the George W. Hill Correctional Facility. (Compl. ¶ 17.) Plaintiff alleges that while in custody, he had a seizure and correctional officers handcuffed him to a gurney for transportation to obtain medical treatment. (Compl. ¶ 18.) Plaintiff claims that "[a]s a result of Plaintiff's seizure, his right arm locked into place" and that when the correctional officers attempted to handcuff him to the gurney, his locked arm was "forcibly moved. . . causing a torn labrum and torn rotator cuff in his right arm, and other injuries." (Compl. ¶¶ 19-20.)

Plaintiff filed his Complaint on November 30, 2018. (Compl.) Defendants filed their Motion to Dismiss on January 7, 2019, and Plaintiff responded on February 5, 2019. (Mot.; Resp.)

**II.     Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F. 3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings Ltd., 292 F. 3d 361, 374 n. 7 (3d Cir. 2002)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court in Iqbal, however, explains that while factual allegations must be treated as true, legal conclusions do not. 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing

Twombly, 550 U.S. at 555).

**III.    Discussion**

    **A.    Plaintiff's Monell claim**

CEC argues that Plaintiff's Complaint is insufficient to state a claim that his constitutional rights were violated pursuant to a municipal policy or custom. CEC contends that "Plaintiff has alleged absolutely no facts to demonstrate any of the alleged customs or policies of CEC . . . support his claims [but] . . . merely has alleged he was treated unconstitutionally." (Mot. Memo. at 7.)

Municipalities may be liable for civil rights violations under § 1983 where the municipality itself causes a constitutional violation; a municipality is not subject to *respondeat superior* liability under § 1983. Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 691 (1978). The Third Circuit has applied this theory to private companies performing municipal functions. See, e.g. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 578 (3d Cir. 2003) (applying Monell to a suit against "a private company that provides health care services to . . . inmates.").

The Supreme Court has held that in limited circumstances, "an allegation of 'failure to train' can be the basis for liability under § 1983" where a "municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom'." City of Canton, Ohio v. Harris, 489 U.S. 378, 387, 389 (1989). The municipality must be on "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights" in order to be found deliberately indifferent for choosing to

3

retain the program. Connick v. Thompson, 563 U.S. 51, 62 (2011).

To state a plausible Monell claim, Plaintiff must identify a policy or custom, identify the alleged violation of the plaintiff's constitutional rights, and establish a causal link between the policy or custom and the plaintiff's injury. Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403–04 (1997); see also Wood v. Williams, 568 F. App'x 100, 105 (3d Cir. 2014) (finding that a complaint was deficient in alleging a claim for failure to train or supervise because "[t]he complaint did not allege facts showing any particular or specific policy or custom, or how it allowed the claimed constitutional violation to occur, identifying the policymaker or decisionmaker, or showing prior notice through a pattern of similar constitutional violations."). The Third Circuit has held that a plaintiff must identify a policy or custom and specify facts showing what exactly the policy was. McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). A complaint must satisfy the "'rigorous standards of culpability and causation' required for municipal liability." Id. (quoting Bd. Of Cnty. Comm'rs of Bryan Cnty., 520 U.S. at 397.)

Plaintiff's Complaint asserts that CEC has a policy or custom of failing to train its officers. Plaintiff claims that CEC "did nothing on an on-going basis to ensure that the officers . . . complied with applicable rules and regulations, particularly those related to use of force." (Compl. ¶ 66.) Plaintiff also alleges that CEC has:

> encouraged, tolerated, ratified, and ha[s] been deliberately indifferent to the following patterns, practices and customs, and for the need for more or different training, supervision, investigation or discipline in the following areas of:
> (a) The use of unreasonable force, and/or excessive force, force by corrections officers;
> (b) The proper exercise of correctional police powers, including, but not limited to the unreasonable use of force, and the excessive use of force, and/or the use of force in violation of citizens' civil

4

        rights;
- (c) The monitoring of officers, including, but not limited to officers it knew or should have known may have been suffering from emotional or psychological problems that impaired their ability to function as officers;
- (d) The failure to identify and take remedial or disciplinary action against correctional officers who were the subject of prior civilian or internal complaints of misconduct;
- (e) Correctional officers' use of their status as officers to employ the use of excessive force, or to achieve ends not reasonably related to their correctional duties; and
- (f) The failure of correctional officers to follow established policies, procedures, directives and instructions regarding the use of force under such circumstances as presented herein.

(Compl. ¶ 78.) Plaintiff also asserts that CEC "knew that its corrections officers could regularly encounter similar situations as found herein . . . [and that] a history of such employees mishandling of such situations exists, and those wrong choices by said corrections officers, employees and agents, frequently cause deprivation of constitutional rights." (Compl. ¶ 65.)

      Plaintiff's Complaint does not adequately allege that CEC was deliberately indifferent in its failure train its employees. Although Plaintiff asserts that there was a history of correctional officers violating constitutional rights of inmates, he does not provide any factual specificity. Moreover, Plaintiff does not set forth specific facts from which it could be inferred that CEC adopted a policy or custom, and that his injury was a result of this policy or custom. A single incident is insufficient to establish municipal liability. City of Oklahoma City v. Tuttle, 471 U.S. 808, 824, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985). Plaintiff's Complaint is a far cry from the "rigorous standards" required by Bd. Of Comm'rs for municipal liability.

      Plaintiff's Complaint may be amended to detail with more specificity which CEC policy or custom demonstrates that it was deliberately indifferent in its failure to train its correctional officers. If Plaintiff chooses to amend, he must connect this policy or custom with his injury.

Thus, we will dismiss Count II of Plaintiff's Complaint, without prejudice, with leave to amend.

**B.     Plaintiff's Negligence claim**

Next, CEC moves to dismiss Plaintiff's claims of negligence. Plaintiff does not object to Defendant's characterization of this claim as corporate negligence and thus we analyze it as such.

CEC argues that Plaintiff has failed to state a claim for corporate negligence because CEC "cannot be responsible in negligence [for] the alleged intentional conduct of . . . unidentified parties." (Mot. Memo. at 9.) CEC also states that "there are no policies or customs identified in the Complaint that could be considered to have been negligently promulgated or followed." (Id.) Plaintiff responds that he has adequately plead a claim for negligence. (Resp. at 11-12.)

In stating his negligence claim, Plaintiff relies upon many of the same alleged actions as its Monell claim—essentially asserting that CEC was negligent in failing to properly train, supervise, monitor, and discipline correctional officers, particularly as it relates to the use of force. (Compl. ¶ 88.) Plaintiff also alleges negligent hiring and screening of correctional officers. (Id.)

"Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed to the patient, which is to ensure the patient's safety and well-being while at the hospital." Thompson v. Nason Hosp., 527 Pa. 330, 339, 591 A.2d 703, 707 (1991). To establish a prima facie case for corporate negligence, Plaintiff must show: (1) Defendant's actions deviated from an accepted medical standard; (2) Defendant had actual or constructive knowledge of the defect or procedures that created the harm; and (3) Defendant's negligence was a substantial factor in causing the harm. Davis v. Corizon Health, Inc., 2015 WL

6

518263, at *4 (E.D. Pa. Feb. 9, 2015) (Stengel, J.).

Private prison health care providers have been held liable for corporate negligence in other district courts in the Third Circuit. See Fox v. Horn, 2000 WL 49374, at *8 (E.D. Pa. Jan. 21, 2000) (Buckwalter, J.) (predicting the Pennsylvania Supreme Court would extend corporate liability to private prison healthcare providers); Murzynski v. Erie Cty., 2016 WL 5872430, at *7 (W.D. Pa. Oct. 7, 2016) ("the Court finds that the doctrine of corporate negligence extends to a prison's mental health service provider"); Ponzini v. PrimeCare Med., Inc., 269 F. Supp. 3d 444, 472 (M.D. Pa. 2017), appeal docketed, No. 17-3134 (3rd. Cir. argued March 14, 2019) (affirming jury's finding that prison health care provider was liable in corporate negligence).

No party has provided us with a case, and we are not aware of any case, where this theory has been applied to a private corporation who *operates* a prison, rather than provides health care services within one. In Scampone v. Highland Park Care Ctr., LLC, 57 A.3d 582, 606 (Pa. 2012), the Pennsylvania Supreme Court wrote that the key to its analysis of corporate negligence is "the relationship between the hospital and patient—the parties, as in every case where the question of duty arises." Here, CEC operates and manages George W. Hill Correctional Facility, rather than provides medical services.

The only case Defendant cites in its brief is Davis v. Hoffman, 972 F. Supp. 308 (E.D. Pa. 1997) (Gawthrop, J.). There, the plaintiff brought suit against Reading Hospital and two medical professionals after a hysterectomy was performed during an operation, allegedly without her consent. The District Court granted the defendant's motion to dismiss the corporate negligence claim against the hospital, noting that "[a]ssuming *arguendo* that corporate negligence theory could include the duty to obtain informed consent, negligence could not satisfy the mental state requirement for battery." 972 F. Supp. at 313. Defendant cites Davis as support

7

for its proposition that "[a] corporate negligence claim does not exist under Pennsylvania law where the underlying claim amounts to an intentional tort." Mot. Memo. at 8.

We do not agree with Defendant that the situation in this case is "very similar" to Davis. Plaintiff's alleged injury was not related to medical treatment, but rather allegedly resulted from mistreatment by correctional officers while Plaintiff was being transported to obtain medical treatment.

Nonetheless, we agree with Defendant that "there are insufficient facts to support any claims of corporate negligence," particularly where the "persons who allegedly assaulted the Plaintiff are unidentified [and] there is no information as to hiring, supervision, lack of discipline, etc. in the Complaint that could support such a cause of action." (Mot. Memo. at 9.) Again, Plaintiff has not alleged sufficient facts that could sustain a corporate negligence claim. Indeed, we are not convinced such a claim would be appropriate or cognizable against this Defendant. We therefore grant Defendant's motion and dismiss this claim, without prejudice, with leave to amend.

## IV. Conclusion

For the reasons stated above, Defendant CEC's Motion to Dismiss Plaintiff's complaint is GRANTED without prejudice, with leave to amend.

An appropriate Order follows.

O:\CIVIL 18\18-5299 Smith v. Community Ed. Centers\18cv5299 Memo re MTD.docx